**In re DANA CORPORATION,
et al., Debtors.**

**No. 06–10354 (BRL).**

United States Bankruptcy Court,
S.D. New York.

April 19, 2006.

Law Offices of Douglas T. Tabachnik, Manalapan, NJ, by Douglas T. Tabachnik, Stutzman, Bromberg, Esserman & Plifka, Dallas, TX, by sander L. Esserman, for Ad Hoc Committee of Asbestos Personal Injury Claimants.

SimmonsCooper LLC, East Alton, IL, by Robert W. Phillips, for SimmonsCooper Claimants.

Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, DE, by Noel C. Burnham, Natalie D. Ramsey, Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, Oakland, CA, by Steven Kazan, for Certain Cancer Claimants of Dana Corp., et al.

Maritime Asbestosis Legal Clinic, a division of The Jaques Admiralty Law Firm, P.C., Detroit, MI, by Alan Kellman, for Asbestosis Claimants.

Jones Day, New York City, by Corinne Ball, Heather Lennox, Jeffrey Ellman, Ross Barr, for Debtors and Debtors in Possession.

Kramer Levin Naftalis & Frankel LLP, New York City, by Kenneth H. Eckstein, Thomas Moers Mayer, Matthew J. Williams, for Official Committee of Unsecured Creditors of Dana Corporation, et al.

Stroock & Stroock & Lavan LLP, New York City, by Kristopher M. Hansen, for Ad Hoc Committee of Dana Noteholders.

## *DECISION AND ORDER DENYING MOTION FOR ORDER REQUIRING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL ASBESTOS COMMITTEE*

BURTON R. LIFLAND, Bankruptcy Judge.

Before this Court is the Ad Hoc Committee of Asbestos Personal Injury Claim-

ants' (the "Movants") motion (the "Motion") pursuant to section 1102(a)(2) of title 11 of the United States Code (the "Bankruptcy Code") for an Order directing the United States Trustee (the "UST") to appoint an Official Committee of Asbestos Personal Injury Claimants (the "Proposed Committee"). Joinder was filed by Certain Cancer Claimants of Dana Corp. (the "CCCDC") and the Maritime Asbestosis Legal Clinic, and a response supporting the Motion was filed by the SimmonsCooper Claimants.[1] Objections were received from the Dana Corporation and forty-one of its affiliates (collectively, the "Debtors"), the UST, the Official Committee of Unsecured Creditors (the "Official Committee") and the Ad Hoc Committee of Dana Noteholders (the "Ad Hoc Noteholders Committee"). At the outset of argument on the Motion, all parties, including the Movants, agreed that this is not an asbestos driven proceeding.

### Background

On March 3, 2006, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are leading suppliers of modules, systems and components for original automobile equipment manufacturers and service customers in the light, commercial and off-highway vehicle markets.

By letter dated March 9, 2006, counsel for an asbestos claimant requested the UST appoint an official committee of asbestos personal injury claimants. On March 10, 2006, the organizational meeting was held in these cases and the UST appointed the Official Committee, comprised of seven members,[2] including one asbestos claimant.[3] The UST did not appoint a separate asbestos claimants committee.

### Discussion

 The decision to appoint an additional committee is governed by section 1102(a) of the Bankruptcy Code, which provides as follows:

(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee . . . may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate;

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure the adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee.

---

1. The SimmonsCooper Claimants, in addition to their response in support of the Motion, requested the Court consider alternative relief compelling the Debtor to liquidate asbestos claims in the ordinary course of business or establish an expedited procedure for relief from the automatic stay motions for personal injury asbestos claims. This requested form of relief is an inappropriate adjunct to a section 1102 motion and will not be considered here.

2. The Committee members are: P. Schoenfeld Asset Management (a bondholder); Metaldyne Company, LLC (a trade creditor); Sypris Solutions, Inc. (a trade creditor); Wilmington Trust Company (the indenture trustee for the bondholders); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (a union); Eaton Corporation (a trade creditor); and Julio Gonzalez Jr., as Special Administrator of the Estate of Julio Gonzalez (an asbestos claimant).

3. The United States Trustee originally appointed an asbestos claimant to the Creditors Committee, but later that individual was removed because his claim against the Debtors was dismissed and no longer exists. Julio Gonzalez Jr. is now the asbestos claimant on the Official Committee.

11 U.S.C. § 1102. The appointment of an additional committee under section 1102(a)(2) is considered "extraordinary relief." *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr.S.D.N.Y.2002); *In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D.Pa.1989); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 655, 661 (Bankr.E.D.Pa.1987). The movant has the burden of proving that the appointment of an additional committee is necessary to insure "adequate representation" of the moving party. *Enron*, 279 B.R. at 685. Bankruptcy courts have discretion to examine the circumstances on a case-by-case basis to determine if additional committees are warranted. *Enron*, 279 B.R. at 685; *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr.S.D.N.Y.1985); *see also In re Northwestern Corp.*, 2004 WL 1077913, *2 (Bankr.D.Del. May 13, 2004); *In re Johns–Manville Corp.*, 68 B.R. 155, 159 (S.D.N.Y. 1986).

■ Courts generally consider a similar set of factors in analyzing the adequacy of representation by an official committee of unsecured creditors, including:

1. The ability of the committee to function;

2. The nature of the case;

3. The standing and desires of the various constituencies;

4. The ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b);

5. The delay and additional cost that would result if the court grants the motion;

6. The tasks that a committee or separate committee is to perform; and

7. Other factors relevant to the adequate representation issue.

■ *In re Northwestern Corp.*, 2004 WL at *2; *Enron*, 279 B.R. at 684; *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr.D.Del.1996); *In re McLean Industries, Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y.1987); *In re Johns–Manville Corp.*, 68 B.R. at 159. No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case. *In re Kalvar Microfilm*, 195 B.R. at 601.

*Ability of the Committee to Function*

The Official Committee has a fiduciary duty to protect the interests of all unsecured creditors. The ability of an official committee to function is a significant factor in the determination of whether a court should order the appointment of another committee. *Enron*, 279 B.R. at 686. The Motion suggests that although there is an asbestos claimant on the Official Committee, the other members will dominate committee discussions and therefore one member of the Official Committee will not provide adequate representation for asbestos related personal injury claimants (the "Asbestos Claimants"). Essentially, the Motion makes a prediction that in the future, the Official Committee will fail to adequately represent the Asbestos Claimants.

■ While the interests of the Official Committee members may not always be aligned, the presence of potential conflict does not always require separate committees for representation to be adequate. *McLean*, 70 B.R. at 861. Creditor committees often contain creditors having a variety of viewpoints (heterogeneous); however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a

consensus.[4] *Id.* at 861. The issue is not whether the Official Committee is an exact replica of the creditor body, but whether representation of various creditor types is adequate. *See Enron,* 279 B.R. at 690; *In re Hills Stores,* 137 B.R. 4, 7 (Bankr. S.D.N.Y.1992). As noted above, the Official Committee includes a diverse group of creditors, including: representatives of bondholders, an indenture trustee, a labor union, trade creditors and an asbestos claimant. Additionally, the Movants have not cited a single instance where the ability of the Official Committee to function has been impaired, and no such complaints have been made. *See also Enron,* 279 B.R. at 684.

*Nature of the Case*

██ The Debtors' cases are complex jointly administered chapter 11 cases, but the large size of a bankruptcy case is not determinative of whether additional committees should be appointed. *McLean,* 70 B.R. at 861. As disclosed in Dana's Form 10–Q filed on January 18, 2006, the Debtors recorded revenue of more than $7.5 billion and had assets of approximately $7.9 billion and liabilities totaling $6.8 billion. According to Form 10–Q, the Debtors had approximately 88,000 active pending asbestos claims, 10,000 of which were settled and awaiting documentation. Debtor's Objection at ¶ 8. Debtors note that only seven percent of the cases filed against them allege mesothelioma or cancer and the "vast majority" of the cases filed against Debtors do not involve any of the Debtors' products and ultimately are dismissed. *Id.* Debtors pointed out that of eleven verdicts in asbestos cases since 2001, ten were in favor of the Debtors and the remaining case is on appeal. *Id.* According to the Official Committee, asbestos claims make up only approximately three percent of the unsecured claims against the Debtors. As is clear from the myriad documents filed in these cases, the Debtors' economic plight is not asbestos driven.

*The Standing and Desires of the Constituencies*

The Movants suggest that their interests are completely different than those of the other Official Committee members because of the possibility that Debtors may seek a channeling trust pursuant to section 524(g) of the Bankruptcy Code. No plan has been filed in these cases and at this early triage stage, there has been no indication to this Court that the Debtors plan to implement a section 524(g) trust. The possibility remains that asbestos claims will "pass through" the bankruptcy and that claimants will have the ability to seek recovery from the reorganized Debtor entities.

Although the Movants assert that the Debtors have underestimated asbestos liability and that the Asbestos Claimants will not be adequately represented by the one member of the Official Committee, it appears the Movants' concerns may be somewhat overblown. There has been no evidence presented to this Court to rebut the Debtors' account of their asbestos liability. In fact, the UST requested substantiation of the underestimation of liability from the Movants rebutting the Debtor's estimation of their asbestos liability, but no response was received.

*Ability to Continue Participating and Recover Costs*

Even without the appointment of an Official Committee, the Asbestos Claimants may continue to monitor and participate in

---

4. Additionally, pursuant to the Official Committee's bylaws, if a member of the Committee does not agree with the position adopted by the Official Committee, that member may represent its own position to the Court individually. Official Committee Objection at ¶ 2.

these cases. This Court acknowledges that asbestos claims typically involve specialized issues and complicated matters, however, the Movants and the parties joining in their requests are represented by sophisticated, competent counsel with a wealth of experience in asbestos claims. Their voices have been and likely will continue to be heard in this case. See 11 U.S.C. § 1109(b); *Enron*, 279 B.R. at 693; *Dubin v. SEC (In re Johns–Manville Corp.)*, 824 F.2d 176, 179–81 (2d Cir.1987). In fact, Mr. Gonzalez, Jr., the asbestos claimant on the Official Committee, is represented by John Cooney, a managing partner at Cooney and Conway. According to the firm's website, they have twenty years of asbestos litigation experience.

*Additional Cost to the Estate is Not Justified*

The additional cost to be incurred by the Debtors' estates cannot be justified. See *Enron*, 279 B.R. at 685; *Kalvar Microfilm*, 195 B.R. at 601. This Court is very aware of the high cost of legal and professional fees in large chapter 11 cases. Appointing a separate committee for the Asbestos Claimants may inevitably lead to duplicative efforts in these cases.

*Other Considerations*

Unlike the Johns–Manville and Owens Corning cases, these Debtors were not driven into bankruptcy by the magnitude of its asbestos liability. In this case, the Debtors' petition lists six factors that contributed to the Debtors' need to file. Asbestos claims were not mentioned in the affidavit filed with the Debtors' Chapter 11 petitions. The Official Committee's calculation that asbestos claims make up less than three percent of all unsecured claims against the Debtors is further support for the assertion that asbestos liability was not a factor in the Debtors' decision to file its petition. "The Debtors have consistently stated that their asbestos liability is man-

ageable and that their insurance coverage for these matters is anticipated to be adequate." Debtors Objection at ¶ 7.

*Conclusion*

The determination of whether this Court should order the UST to appoint a separate asbestos committee requires the balancing of the factors discussed above.

Although these cases are complex, there has been no evidence before this Court to suggest that the Official Committee is not adequately representing the Asbestos Claimants or that the cost to the estate of appointing the Proposed Committee would be justified. The Movants have the right to continue monitoring these cases and in fact, already have representation on the Official Committee. The Motion, therefore, is denied.

IT IS SO ORDERED.